IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOUGLAS DODSON, ) | |
| RICHARD LITTLE, and ) | |
| JASPER VICKS, et al. ) | |
| ) | Case No. 3:17-CV-00048 |
| Plaintiffs, ) | |
| ) | District Judge Campbell |
| v. ) | Magistrate Judge Frensley |
| ) | |
| CORECIVIC, Formerly d/b/a ) | |
| CORRECTIONS CORP. OF AMERICA ) | |
| and TENNESSEE DEPT. OF ) | |
| CORRECTION ) | |
| ) | |
| and ) | |
| ) | |
| TENNESSEE DEPT. OF CORRECTION ) | |
| COMMISSIONER TONY PARKER, ) | |
| in his official capacity, ) | |
| ) | |
| Defendants. ) | |

**AMERICAN DIABETES ASSOCIATION'S
MOTION TO INTERVENE AS PLAINTIFF**

The American Diabetes Association ("The Association"), by and through counsel, files this Motion to Intervene as a plaintiff in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure. In support of its motion, the Association states as follows:

**I.    RELEVANT FACTS & PROCEDURAL HISTORY**

The American Diabetes Association is the leading diabetes research, advocacy, and education organization in the United States. The Association works with patients, health care professionals, scientists, public officials, families, and other stakeholders to achieve its mission to prevent and cure diabetes and to improve the lives of all people affected by diabetes.

1

In 2016, the Association was contacted by Douglas Dodson, along with several other inmates at Trousdale Turner Correctional Facility, regarding issues with access to diabetes treatment at Trousdale Turner. The Association went above and beyond its usual assistance protocol to help these inmates, including keeping a special record of these calls, assigning attorneys to conduct research on the issues they raised, and providing detailed information on the inmates' legal rights to adequate diabetes care. Eventually, the Association helped Mr. Dodson and the other men find counsel and provided extensive information and guidance to counsel about this case.

The initial complaint in this matter was filed on January 23, 2017 (Doc. No. 1). Answers were filed in February and March 2017 (Doc. No. 22 & 30). Plaintiffs filed an Amended Complaint in September 2017 (Doc. No. 55). Defendants filed the first Motions to Dismiss in August 2017 (Doc. No. 43), with motions practice on these motions continuing from August 2017 until February 2, 2018 (Doc. No. 105). Meanwhile, Plaintiffs filed a pending motion for class certification (Doc. No. 68). Defendant CoreCivic filed a Motion to Stay Discovery on October 3, 2017 (Doc. No. 69), which was granted in part on February 2, 2018 (Doc. No. 105). Therefore, despite the fact that the case has been pending a little over a year, it remains in the initial stages, with little written discovery, no depositions, and no advanced motions having been filed.

The Association's interest in intervening in this case is twofold. First, the months of research, investigation, and preparation the Association expended to assist individuals housed at Trousdale Turner amounted to a significant drain on Association resources. Therefore, the Association seeks to intervene as plaintiff in this matter in order to redress its injuries caused by Defendants' unlawful activity at Trousdale Turner. Second, the Association, as the entity that develops and publishes the Standards of Care for Diabetes, maintains an interest in ensuring that

any injunctive relief obtained in this case is consistent with the Standards of Care so that it can abate ongoing and future injuries stemming from Defendants' continuing unlawful actions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24 allows for two types of intervention: intervention as of right and permissive intervention. Fed. R. Civ. P. 24(a) & (b). "Rule 24 should be broadly construed in favor of potential intervenors." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (internal quotation marks omitted). "An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994).

To intervene as of right, the intervenor must establish four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Glickman*, 226 F.3d at 472.

"Regarding permissive intervention, so long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion." *Id*.

The Sixth Circuit has held that "the determination of whether a motion to intervene is timely 'should be evaluated in the context of all relevant circumstances'":

> We have held that the following factors should be considered in determining timeliness: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their

3

> interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention . . . . The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important of these circumstances . . . . A more critical factor is what steps occurred along the litigation continuum during this period of time.

*Id*. at 472-73, 475 (internal citation omitted). "[I]n discussing the fourth element of intervention as of right, [the Sixth Circuit has] gone so far as to say that 'proposed intervenors need only show that there is a potential for inadequate representation.'" *Id*. at 472 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999)).

The Association seeks to intervene as of right or, in the alternative, seeks permissive intervention.

### III. ARGUMENT

**A. The Motion to Intervene is Timely.**

Timeliness is the first and arguably most important consideration for either type of intervention. The test of timeliness is the same in either case. In determining timeliness, the Court should consider, "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention." *Id*. at 472-73. While this case has been pending for a little over a year, the amount of time between the filing of the complaint and the motion to intervene is one of the least important considerations. More critical to the determination of timeliness is what steps have already occurred along the litigation continuum. *Id*. at 475. The purpose of the "timeliness inquiry is to prevent a tardy intervenor from derailing a lawsuit within

4

sight of the terminal." *United States v. BASF-Inmont Corp.*, No. 93-1807, 1995 U.S. App. LEXIS 9158, at *2 (6th Cir. 1995).

As is made clear by the procedural history outlined in Section I, despite its calendar life, this case has hardly progressed past the initial stages. The current controlling Complaint—the Amended Complaint—was only filed in September 2017, barely five months ago. The only significant activity in the case since then has been motions to dismiss and/or for summary judgment, which are still awaiting ruling, and a motion to stay discovery, which was granted in part. (Doc. No. 105). This last event is particularly important. As the Western District of Tennessee recently noted, when discovery has closed, this fact weighs against the potential intervenor's motion. *See Gulley v. Fishing Holdings, LLC*, No. 1:14-cv-01138-STA-egb, 2017 U.S. Dist. LEXIS 140815, at *8 (W.D. Tenn. Aug. 31, 2017). *See also Johnson v. City of Memphis*, 73 Fed. Appx. 123, 132 (6th Cir. 2003) (affirming the denial of a motion to intervene because it came a year after the complaint, by which time the parties had completed discovery); *Creusere v. Bd. of Ed. of City Sch. Dist. of City of Cincinnati*, 88 Fed. Appx. 813, 825 (6th Cir. 2003) (affirming the denial of a motion to intervene "because . . . discovery was long over, the deadline for dispositive motions had passed months before, and trial was scheduled in about a month"); *Morris v. Tate (In re S. Ohio Corr. Facility)*, 24 Fed. Appx. 520, 533 (6th Cir. 2001) (affirming District Court's denial of motion to intervene that was filed after settlement had already been reached); *Glickman*, 226 F.3d at 474 (intervention was untimely because the motion was filed ten weeks after the close of discovery, and seven weeks before the dispositive motion deadline). Indeed, the *Gulley* Court noted that other districts and circuits have placed such emphasis on the phase of discovery that intervention was allowed up to four years after the filing of a complaint where the "the suit had not advanced beyond early discovery." 2017 U.S. Dist. LEXIS 140815, at *8. Since

5

discovery in this matter is currently stayed, the time is optimal for the Association to intervene, as it will cause absolutely no change in the status of discovery.

As for the motions to dismiss and/or for summary judgment, while a previously granted motion to dismiss can weigh against intervention, there is no reason to draw the same conclusion from a motion that still awaits decision. *See Blount-Hill v. Zelman*, 636 F.3d 278, 285 (6th Cir. 2011). This is because the progression consideration is "more properly directed to the finality of any judgments or orders entered." *United States v. City of Detroit*, 712 F.3d 925, 927-38 (6th Cir. 2013). Since there have not yet been any final judgments, there is no reason for the motions to weigh against intervention.

The second timeliness consideration asks "district courts [to] evaluate the purpose of intervention in terms of the 'importance of the legal interests asserted.'" *Gulley*, 2017 U.S. Dist. LEXIS 140815, at *9. "Some examples of compelling reasons are 'to avoid duplicative litigation and . . . to participate in an action by which [the intervenor] will be bound.' . . . But the intervenor must seek to do more than 'merely an opportunity to present an argument or expertise.'" *Id*. (internal citations omitted). As explained in Section I, the Association wishes to intervene as a plaintiff to redress the past injuries it suffered in investigating and attempting to negate the impact of Defendants' unlawful actions and to put an end to Defendants' conduct so that it need not continue to divert its resources. As a nonprofit entity with limited legal advocacy resources, this interest is very important to the Association. The past and future injuries the Association seeks to address through intervention are directly traceable to the illegal actions being challenged in this case. *See*, *e.g.*, *Housing Opp. Made Equal (HOME) v. Cincinnati Enquirer*, 943 F.2d 644, 646 (6th Cir. 1991) (stating that an advocacy organization suffers "a concrete and demonstrable injury . . . arising from a purportedly illegal action [that] increases the resources the group must devote

6

to programs independent of its suit challenging the action"); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Group*, 725 F.3d 571, 576 (6th Cir. 2013); *Fair Hous. Council, Inc. v. Vill. Of Olde St. Andrews*, 210 F. App'x 469, 476 (6th Cir. 2006).

As for the third factor, "A party must have been aware of the risk that his interest may be affected by the litigation, and that [its] interest may not be fully protected by the existing litigants." *Gulley*, 2017 U.S. Dist. LEXIS 140815, at *9. While the Association has of course known about its own involvement in this matter since the beginning, the amount of resources the Association has spent on this matter has increased as the matter has progressed, making its interests, and thus the risk to those interests, more pronounced. The Court's recent stay of discovery makes clear that all involved expect this to become a lengthy matter; therefore, the Association must now become involved in order to protect its current and future interests. Since these interests are unique to the Association, they are not protected by the current Plaintiffs. Furthermore, the Association could not have known that existing Plaintiffs would be moved to other facilities. Since these individuals' standing has come into question, it has become clear that the Association's interest is not fully protected by the existing litigants.

Fourth, "[t]he sorts of prejudice that would weigh against intervention involve a duplication of efforts in discovery or dispositive motions." *Id*. at *11. Again, discovery is currently stayed in this matter, and the only potentially dispositive motions that have been filed are still awaiting judgment. The Association, of course, cannot predict if Defendants will wish to refile these motions against it. But, even if they do, it will not be a "duplication of effort." Defendants' previous motions addressed only the Individual Plaintiffs' standing and status; this is completely different from whatever argument Defendant may ostensibly raise against the Association. Therefore, while filing yet another motion to dismiss may technically be a "duplication," in that it

7

is another of the same type of motion, the legal "efforts" involved would be independent and no greater than if the Association had been a plaintiff from the beginning.

The final timeliness consideration is "the existence of unusual circumstances militating against or in favor of intervention." *Glickman*, 226 F.3d at 472. The Association's status as a nonprofit, advocacy organization for persons like Plaintiffs is one such circumstance. While the Association seeks intervention predominantly to protect its own interests, it is also highly motivated by its mission to improve the lives of those affected by diabetes. The Sixth Circuit has noted that intervention of right is allowable for advocacy organizations who are seeking in part to protect the rights of those for whom it advocates. *See Larkin v. Mich. Dep't of Social Servs.*, 89 F.3d 285, 288 (6th Cir. 1996) ("Michigan Protective and Advocacy Services (MPAS) moved to intervene as of right on the ground that it had a federal mandate to protect the rights of the handicapped. The district court granted that motion."). [1] Woven into the Association's efforts to protect its interests through involvement in this case is the ultimate improvement of diabetes care at Trousdale Turner. Thus, the Association's unique status as an organization with a mission to advocate for individuals like Plaintiffs should be given weight in the timeliness analysis, in favor of intervention.

Therefore, all timeliness considerations weigh in favor of finding that the Association's motion to intervene is timely.

**B. The Association Should Be Allowed to Intervene as of Right.**

---

[1] In *Larkin*, the Sixth Circuit upheld the district court's partial summary judgment in favor of the plaintiffs, including MPAS. *Id.* at 292.

To show intervention as of right, the intervenor must show four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Glickman*, 226 F.3d at 472. Most of these considerations are also considerations in the timeliness inquiry, as laid out above.

As explained above, the Association meets the first element, timeliness.

Turning to the second element, "The Sixth Circuit 'subscribe[s] to a rather expansive notion of the interest sufficient to invoke intervention of right.'" *Gulley*, 2017 U.S. Dist. LEXIS 140815, at *13 (quoting *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 371 (6th Cir. 2014)). "[T]he applicant for intervention must have a direct and substantial interest in the litigation, such that it is a real party in interest in the transaction which is the subject of the proceeding." *Id*. As explained previously, the Association's interest in the matter is twofold. First and foremost, the Association has expended significant resources in assisting the Plaintiffs and other putative class members in the matter, both before and after litigation was filed. These expenditures are directly traceable to the Defendants' illegal actions, and the Association has a concrete interest in putting an end to this diversion of resources. Second, the Association, as an advocacy organization for people like Plaintiffs and potential future plaintiffs, is in a unique position to help protect the rights of these individuals. It is of paramount importance to the Association in meeting its mission that individuals receive appropriate diabetes care, and thus, the Association has a substantial interest in taking steps to remove barriers to receiving this care.

9

Taking the third and fourth elements together, "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Id*. at \*14 (quoting *Davis v. Lifetime Capital, Inc.*, 560 Fed. Appx. 477, 495 (6th Cir. 2014)).  Likewise, "The proposed intervenor's burden in showing inadequacy is minimal . . . . The proposed intervenor need show only that there is a potential for inadequate representation." *Id*. at \*15 (internal citations omitted); *see also Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) ("The Supreme Court has held, and we have reiterated, that the proposed intervenors' burden in showing inadequacy is minimal."). Here, the Association has a substantial legal interest in this action due to both its own past and future economic injuries as well as the ongoing damage to those for whom it advocates. It is substantially more efficient for both the Association and the parties in this matter for the Association to assert these rights, which are inextricably intertwined with this litigation, here. Indeed, the Association will lose all ability to advocate on behalf of these Plaintiffs and future plaintiffs if it is not allowed to intervene. "Even if it could be said that the question raised is a close one, 'close cases should be resolved in favor of recognizing an interest under Rule 24(a).'" *Grutter*, 188 F.3d at 399.

These rights are not adequately protected by the existing Plaintiffs, who have no interest in redressing the Association's injuries. Moreover, as the entity which develops and publishes the Standards of Care for Diabetes, the Association has a particularized interest in ensuring that any injunctive relief secured is consistent with the Standards of Care. This publication is the cornerstone for the prevention, diagnosis and treatment of diabetes in the United States. It is a highly technical, constantly evolving publication, and includes companion publications such as

Diabetes Management in Correctional Institutions. DIABETES CARE, Jan. 2008.[2] Not only is the Association uniquely situated as an expert in applying its own publications, but if the injunctive relief does not meet these Standards, the Association anticipates that it will be forced to continue diverting resources to address ongoing issues with the adequacy of diabetes care at Trousdale Turner. Furthermore, the Association hopes that any relief obtained will inspire Defendants to employ the same policies and procedures at its other facilities, thus reducing the number of incarcerated individuals the Association must assist across the nation. Finally, the existing parties cannot adequately represent the Association's interests because Defendant CoreCivic has repeatedly moved inmates with insulin-treated diabetes to other prisons. It has become abundantly clear following these events that the Association cannot rely on others to represent its interest in ending Defendants' unlawful actions so that it need no longer divert its resources to assisting those incarcerated at Trousdale Turner. Given *Glickman's* holding that movants need only establish a *potential* for inadequate representation, the Association has clearly met its burden on this fourth consideration for moving to intervene as of right. 226 F.3d at 472.

Therefore, for the reasons laid out above, the Association's motion to intervene as of right should be granted.

### C. In the Alternative, the Association Should Be Allowed Permissive Intervention.

In the alternative, if the Court does not find that the Association has established a right to intervention under Rule 24(a), the Court should grant permissive intervention under Rule 24(b). "Regarding permissive intervention, so long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original

---

[2] This publication is currently being updated.

11

parties, and any other relevant factors is reviewed for an abuse of discretion." *Glickman*, 226 F.3d at 472.

Here, the Association has easily satisfied this lenient standard. The timeliness analysis in Section III(A) makes clear, this motion is timely and the balance of undue delay, prejudice, and other factors weighs in favor of intervention. Plaintiffs do not oppose this motion, and Defendants will not be prejudiced or delayed by it. As for common questions of law and fact, both the Association's previous diversion of resources and its ongoing advocacy on behalf of individuals with diabetes at Trousdale Turner are directly traceable to Defendants' illegal actions that are the subject of this lawsuit. Therefore, the core questions of law and fact in this lawsuit—whether Defendants violated the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act by its actions alleged in the Amended Complaint—are precisely the same as the questions of law and fact that underlie the Association's claims.

Therefore, if the Court is not inclined to grant intervention as of right, it should allow permissive intervention.

### D. The American Diabetes Association Has Standing to Challenge Defendants' Unlawful Actions Concerning Individuals with Insulin-Treated Diabetes.

In the Sixth Circuit, "An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 536-39 (1972)). However, it is not unusual for courts considering intervention motions to show concerns about standing given the similar requirements. Therefore, the Association notes that it does possess independent standing to bring suit against Defendants

12

due to the direct harm to the Association's resources cause by Defendants' unlawful actions. *See*, *e.g.*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (establishing direct harm standing for organizations directly injured by a defendant's statutory violations); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Group*, 725 F.3d 571, 576 (6th Cir. 2013) ("The Supreme Court and this Circuit have found that a drain on an organization's resources, as alleged by Miami Valley, constitutes a concrete and demonstrable injury for standing purposes."); *Fair Hous. Council, Inc. v. Vill. Of Olde St. Andrews*, 210 F. App'x 469, 476 (6th Cir. 2006) (stating that prelitigation costs and expenses are an injury establishing standing); *MX Group Inc. v. City of Covington*, 293 F.3d 326, 334 (6th Cir. 2002) (holding that prudential standing does not apply to Americans with Disabilities and Rehabilitation Act cases); *Housing Opp. Made Equal (HOME) v. Cincinnati Enquirer*, 943 F.2d 644, 646 (6th Cir. 1991) (stating that an advocacy organization suffers "a concrete and demonstrable injury . . . arising from a purportedly illegal action [that] increases the resources the group must devote to programs independent of its suit challenging the action"); *Turner v. City of Englewood*, 195 F. App'x 346, 352-53 (6th Cir. 2006).

## IV.     CONCLUSION

For the reasons stated above, the American Diabetes Association should be allowed to intervene as a Plaintiff in this matter. Failure to allow the Association to intervene will result in substantial harm to the Association's ability to redress its own injuries due to the Defendants' illegal actions as well as its ability to advocate on behalf of the individuals with diabetes at Trousdale Turner Correctional Facility. Therefore, the motion to intervene should be GRANTED.

Respectfully submitted,

/s/ Justin Gilbert
Justin Gilbert (TN Bar No. 017079)

13

GILBERT, MCWHERTER,
SCOTT, & BOBBITT PLC
200 W. Martin Luther King Blvd.
Suite 1067
Chattanooga, TN 37402
Phone: (423) 499-3044
Fax: (731) 664-1540
jgilbert@gilbertfirm.com
Counsel for American Diabetes Association

Alan L. Yatvin (to be admitted pro hac vice)
POPPER & YATVIN
230 S. Broad St., Suite 503
Philadelphia, PA 19102
Phone: (215) 546-5700
Fax: (215) 546-5701
Popper.yatvin@verizon.net
Counsel for American Diabetes Association

Sarah Fech-Baughman (to be admitted pro hac vice)
AMERICAN DIABETES ASSOCIATION
2451 Crystal Drive Suite 900
Arlington, Virginia 22202
Phone: (703) 253-4823
sfech@diabetes.org
Counsel for American Diabetes Association

**CERTIFICATE OF SERVICE**

I certify that a true and exact copy of the foregoing motion to intervene has been served upon Filing Users via the electronic filing system this March 5, 2018, on the following:

Jon C. Goldfarb
L. William Smith
Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC
The Kress Building
301 19th Street, North
Birmingham, Alabama 35203
jcg@wigginschilds.com
wsmith@wigginschilds.com

Charles P. Yezback, III
Yezback Law Offices
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
yezbak@yezbaklaw.com

Erin Palmer Polly
Joseph F. Welborn, III
Butler Snow LLP (Nashville)
The Pinnacle at Symphony Place
150 Third Avenue South, Suite 1600
Nashville, TN 37201
(615) 651-6700
Erin.Polly@butlersnow.com
Joe.Welborn@butlersnow.com

Kyle V. Miller
Butler Snow LLP (Ridgeland, MS)
P O Box 6010
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39158-6010
(601) 948-5711
Fax: (601) 985-4500
kyle.miller@butlersnow.com

15

Jennifer L. Brenner
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202
(615) 532-2500
jennifer.brenner@ag.tn.gov

Torrey Samson
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202-0207
(615) 741-6820
Fax: (615) 532-2541
torrey.samson@ag.tn.gov

        /s/Justin Gilbert