IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DOUGLAS DODSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:17-cv-00048 |
| | ) | |
| CORECIVIC, et al., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE |
| Defendants. | ) | FRENSLEY |

## MEMORANDUM

Pending before the Court are Defendant CoreCivic's Supplemental Motion to Dismiss and for Summary Judgment (Doc. No. 59) and Defendants Tennessee Department of Corrections and Tony Parker's Supplemental Motion to Dismiss (Doc. No. 65).

## BACKGROUND

Plaintiffs Douglas Dodson and Jasper Vick[1] are inmates who were incarcerated at Trousdale Turner Correctional Facility ("Trousdale"), a private prison owned and operated by Defendant CoreCivic ("CCA"), formerly Corrections Corporation of America. Plaintiffs and the proposed class members are persons with insulin-dependent diabetes who require access to blood sugar monitoring and insulin administration in coordination with regular mealtimes. Plaintiffs assert that Defendants have deprived, and continue to deprive, inmates with insulin-dependent diabetes access to basic diabetes care at Trousdale.

Plaintiffs allege that Defendants Tennessee Department of Corrections ("TDOC"), Parker (as Commissioner) ("the State Defendants"), and CCA have denied Plaintiffs and potential class members reasonable accommodations for their disabilities, as required by the Rehabilitation Act

and Title II of the Americans with Disabilities Act ("ADA"), by assigning them to incarceration at Trousdale. Plaintiffs also aver that CCA has subjected Plaintiffs and potential class members to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution by policies and practices that manifest deliberate indifference to Plaintiffs' serious medical needs, specifically access to basic diabetes care - blood sugar monitoring and insulin administration in coordination with regular mealtimes. Plaintiffs contend that these actions by all Defendants have caused them serious injury. Plaintiffs seek declaratory and injunctive relief only.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 129 S.Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

---

[1] Plaintiff Judd has been released from State custody.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, __ F. Supp. 3d __ , 2018 WL 4561248 at * 2 (M.D. Tenn. Sept. 24, 2018). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not rebut, challenge, or contradict anything in the plaintiff's complaint. *Loffredo v. Daimler AG*, 54 F. Supp. 3d 729, 733-34 (E.D. Mich. 2014) (citing *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993)).

## STATE DEFENDANTS' MOTION TO DISMISS

The State Defendants ask the Court to dismiss this action based on failure to exhaust administrative remedies. They assert that Plaintiff Dodson failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").[2]

In support of their Motion, the State Defendants rely upon the Affidavit of Benjamin Bean (Doc. No. 67). As indicated above, under the motion to dismiss standard, the Court may not consider documents outside the pleadings, particularly if they rebut, challenge or contradict the complaint, without turning the motion into one for summary judgment. Fed. R. Civ. P. 12(d).

Bean's Affidavit *does* attempt to rebut, challenge or contradict Plaintiffs' allegations in the Amended Complaint (Doc. No. 55) that they exhausted their administrative remedies. Plaintiffs *do* dispute Bean's assertion that Dodson did not exhaust his administrative remedies.

---

[2] Defendants have not asserted that Vick failed to exhaust his administrative remedies.

3

The Court cannot resolve this disputed issue of fact on a motion to dismiss. Moreover, the Court cannot treat the Motion to Dismiss as one for summary judgment in accordance with Fed. R. Civ. P. 12(d), because the State Defendants have not complied with Fed. R. Civ. P. 56 and Local Rule 56.01. Therefore, the State Defendants' Supplemental Motion to Dismiss for failure to exhaust administrative remedies will be denied.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position

4

will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## CCA'S MOTION FOR SUMMARY JUDGMENT

Mootness

There is no disputed issue of fact as to whether Plaintiffs have been transferred to other facilities. The question is whether those transfers cause Plaintiffs' claims to be moot. Plaintiffs argue that their claims are not moot, because they are still eligible to be returned to Trousdale. Therefore, Plaintiffs contend, they still have standing to pursue their claims. Plaintiffs also assert that the allegations of their Amended Complaint are "capable of repetition, yet evading review" and, therefore, are not moot. Moreover, Plaintiffs claim that, because this is a putative class action, Defendants may not use the "picking off" tactic to transfer Plaintiffs from Trousdale in order to moot Plaintiffs' class claims.

A core tenet of Article III is that federal courts may adjudicate only actual, ongoing cases or controversies. *Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016). To invoke federal jurisdiction, a plaintiff must show a "personal stake" in the outcome of the action. *United States v. Sanchez-Gomez*, 138 S.Ct. 1532, 1537 (2018). This requirement assures that the federal judiciary confines itself to its constitutionally-limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved. *Id*. A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *L.D. v. Sumner County Schools*, 299 F. Supp. 3d 901, 905-06 (M.D. Tenn. 2018). A case that becomes moot at any point during the proceedings is no longer a

5

case or controversy for purposes of Article III and is outside the jurisdiction of the federal courts. *Sanchez-Gomez*, 138 S.Ct. at 1537.

When class actions are involved,[3] the Article III mootness doctrine is "flexible." *Wilson*, 822 F.3d at 942. The general rule is that once a class is certified, the mooting of the named plaintiff's claim does not moot the action, and the court continues to have jurisdiction to hear the merits of the action if a controversy exists between any class member and the defendant. *Id*. When the named plaintiff's claim becomes moot *before* a class is certified,[4] however, the ordinary rule is that dismissal of the action is required. *Id*. But, there are exceptions to this rule.

Capable of Repetition, Evading Review

One of those exceptions is for claims that are "capable of repetition, yet evading review," which applies only in exceptional situations - generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality. *L.D.*, 299 F. Supp. 3d at 907. This exception is limited to situations where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same

---

[3] In two cases previously before this Court, the inmate plaintiffs' claims became moot when they were transferred to other facilities. Those cases were not class actions, and the Court found (in both cases) that a prisoner's transfer to a new facility moots his claims for declaratory or injunctive relief arising from the particular condition of confinement at the former prison. *Whipple v. Millay*, 2017 WL 4176339 (M.D. Tenn. Sept. 21, 2017) and *Dodson v. Colson*, 2014 WL 2946455 (M.D. Tenn. June 30, 2014).

[4] The Court is contemporaneously granting Plaintiffs' Motion to Certify a Class in this case.

complaining party will be subject to the same action again. *Id*. (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).[5]

Here, especially given the length of litigation and the shortage of judges in this district, the challenged action could easily be too short to be fully litigated before any named Plaintiffs being transferred from Trousdale. Citing Tenn. Code Ann. § 41-24-103(d),[6] Plaintiffs contend that there is a reasonable expectation that, even though they were transferred from Trousdale, they are still eligible to return so long as they are in Tennessee's prison system. Defendants assert that this argument is pure speculation, not a reasonable expectation. Speculation does not give Plaintiffs a *reasonable* expectation that they will be returned to Trousdale. *See Wilson*, 822 F.3d at 952; *Whipple v. Millay*, 2017 WL 4176339 at * 5 (M.D. Tenn. Sept. 21, 2017) (inmate's speculation that he might return to Turney Center at an unknown future date does not constitute a reasonable showing that he will again be subjected to the conditions at that prison).

Plaintiffs cite *Washington v. Harper*, 110 S.Ct. 1028 (1990), in support of their argument. In *Washington*, the inmate was being treated for a serious mental disorder. He challenged the defendant's use of anti-psychotic drugs at a center for mentally ill prisoners (the "Center"). The Court found that, even though the defendant had stopped administering anti-psychotic drugs to the plaintiff, the plaintiff's claim was not moot because he was still diagnosed with mental illness and was subject to transfer to the Center at any time. *Id*. at 1035. Given the plaintiff's medical history, the Court found it reasonable to conclude that there was a strong likelihood that he might

---

[5] The party asserting the exception bears the burden of proof. *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016).

[6] That statute provides that any inmate sentenced to confinement in TDOC shall be legally eligible to be incarcerated in a facility in which a prison contractor is providing correctional services.

7

again be transferred to the Center for mentally ill prisoners. *Id*. The facts in *Washington* are distinguishable. Here, there is no need for Plaintiffs to be returned to Trousdale for medical care; indeed, the subject of this action is Plaintiffs' claim that the medical care at Trousdale is not appropriate for them.

Plaintiffs cannot rely upon the capable of repetition, evading review exception to mootness because they have not shown a reasonable expectation that they will be returned to Trousdale.

Picking Off Exception

In *Wilson*, the court recognized another exception to the mootness doctrine, the "picking off" exception, where a defendant picks off named plaintiffs in a purported class action before the class is certified. *Wilson*, 822 F.3d at 947; *Unan v. Lyon*, 853 F.3d 279, 285 (6th Cir. 2017). The picking off exception was developed to prevent defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that would be contrary to sound judicial administration. *Id.* Courts recognize this exception even when a motion for class certification is still pending, because a defendant is on notice that the named plaintiff wishes to proceed as a class, and the concern is that the defendant might strategically seek to avoid that possibility. *Id*. Plaintiffs argue that Defendants transferred Dodson and Vick from Trousdale in order to moot this litigation and avoid a class action.

The Sixth Circuit has applied the picking off exception where the defendant was alleged to have strategically mooted the named plaintiffs' claims by providing the relief sought to the named plaintiffs before a class action could be certified. *See*, *e.g., Blankenship v. Secretary of HEW*, 587 F.2d 329, 331-33 (6th Cir. 1978) (*quoted in Wilson*, 822 F.3d at 948); *Unan*, 853 F.3d

8

at 286 (defendant was strategically seeking to avoid litigation by selectively resolving the claims of any potential representatives as soon as they became known to defendant).

In *Blankenship*, the court held that a class action to challenge delays by the Social Security Administration in scheduling administrative hearings was not moot, even though all of the named plaintiffs received their hearings before the district court granted class certification. The court explained that the plaintiffs' claims of delay were the type of claims which continually evade review because the defendants could expedite processing for any named plaintiffs while continuing to allow long delays for other applicants. *Blankenship*, 587 F.2d at 333 (*cited in Wilson*, 822 F.3d at 948). "Refusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses." *Id.*; *see also Wilson*, 822 F.3d at 948-50 (collecting cases).

Here, there is no persuasive evidence that Defendants intentionally "picked off" the named Plaintiffs in order to strategically avoid litigation. At best, there are genuine issues of material fact concerning this allegation. In any event, the Court finds that Plaintiffs' claims are not moot for another reason, as explained below.

<u>Inherently Transitory</u>

The court in *Wilson* applied another exception to the mootness doctrine called the "inherently transitory" exception. In order for this exception to apply, (1) the injury must be so transitory that it would likely evade review by becoming moot before the district court could rule on class certification and (2) it must be clear that other potential class members are suffering the injury. *Wilson*, 822 F.3d at 945; *Unan*, 853 F.3d at 287. The key inquiry for assessing whether something is inherently transitory is not merely how long a claim is likely to remain active.

9

Rather, the crux of the inherently transitory exception is the *uncertainty* about the length of time a claim will remain alive. *Id.*[7]

The Supreme Court has held that a class action remained alive, even though no named class representative with an unexpired claim remained at the time of class certification. *Gerstein v. Pugh*, 95 S.Ct. 854, 861, n.11 (1975) (*cited in Sanchez-Gomez*, 138 S.Ct. at 1537). In *Gerstein*, the Court held that because pretrial custody was inherently temporary and of uncertain length, such that the Court could not determine that any given individual named as a plaintiff would be in pretrial custody long enough for a district judge to certify a class, and because it was certain that there would always be some group of detainees subject to the challenged practice, the class action could proceed. *Id.*

Unlike the capable of repetition, evading review exception, this exception does not require the plaintiffs to show that they personally will be subject to the same practices again. *Wilson*, 822 F.3d at 944. In *Gerstein*, the Court required only that other class members would suffer the same injury. *Id.* at 945. Here, Plaintiffs have sufficiently shown that, without the requested relief, other insulin-dependent inmates will suffer the same injury at Trousdale. Given the control by Defendants over Plaintiffs and potential class members, there is uncertainty about the length of time these inmates will be subject to the alleged deprivations at Trousdale. As noted above, given the length of litigation and the shortage of judges in this district, any challenged

---

7  S*ee also Gawry v. Countrywide Home Loans, Inc.*, 395 Fed. App'x. 152, 159 (6th Cir. 2010) (Plaintiff knew exactly when her claim would become moot and yet did not move for class certification until several years later) *and Olson v. Brown*, 594 F.3d 577, 583 (7th Cir. 2010) (cited in *Gawry*) (duration of inmate's claim was at the discretion of the Indiana Department of Correction, and uncertainty made the inherently transitory exception applicable).

10

action (or lack thereof) at Trousdale could be too short to be fully litigated before the named Plaintiffs or other class members are transferred.

Accordingly, Plaintiffs may rely upon the "inherently transitory" exception to mootness in order to show standing in this case. CCA's motion on the mootness issue will be denied.

Exhaustion of Administrative Remedies

Like the State Defendants, CCA also asserts that Plaintiff Dodson has failed to exhaust his administrative remedies and, thus, his claims must be dismissed. CCA does not dispute that Plaintiff Vick exhausted those remedies. Plaintiff Dodson contends that he was prevented by CCA from exhausting his administrative remedies.

Federal law provides that no action shall be brought with respect to prison conditions under Section 1983 or any other federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *McBee v. Campbell County Detention Center*, 2018 WL 2046303 (6th Cir. Mar. 15, 2018). The dominant concerns of the statute are to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court. *Napier v. Laurel County, Ky*, 636 F.3d 218, 222 (6th Cir. 2011).

In order to properly exhaust administrative remedies, an inmate must comply with the grievance procedures established by the particular state in which he is incarcerated. *Pool v. Klenz*, 2018 WL 1989637 at * 2 (6th Cir. Jan. 17, 2018) (citing *Jones*, 549 U.S. at 218). Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure

11

on the course of its proceedings. *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance. *Id*. In addition, the content of the grievance must be adequate; for example, the grievance must identify each defendant eventually sued and allege mistreatment or misconduct on the part of the defendant. *Bell v. Konteh*, 450 F.3d 651, 653-54 (6th Cir. 2006). It is sufficient if the prisoner's grievance gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim. *Id*. at 654.

It is not disputed that CCA has an administrative grievance system at Trousdale. The procedures in this system involve three levels of review. CCA contends that Dodson filed three grievances but failed to appeal any of them to the highest level. Plaintiffs argue that Defendants prevented Plaintiff Dodson from filing and appealing his grievances.

If a plaintiff contends he was prevented from exhausting his administrative remedies, the defendant must present evidence that the plaintiff's ability was not hindered. *Doe v. Michigan Dept. of Corrections,* 2016 WL 465496 at * 11 (E.D. Mich. Feb. 8, 2016). In *Doe*, the court found a triable issue of fact as to exhaustion, making a grant of summary judgment inappropriate. *Id. see also Surles v. Andison*, 678 F.3d 452, 457-58 (6th Cir. 2012) (dispute of material fact as to whether defendants prevented plaintiff from filing grievances and exhausting his administrative remedies).

There are disputed issues of fact as to whether Dodson was prevented from exhausting his administrative remedies in this case. In any event, because this case is being certified as a class action, the Court must consider whether Vick's exhaustion, which is not disputed, is sufficient.

In limited circumstances, an inmate may rely upon another inmate's grievance for exhaustion purposes. The doctrine of "vicarious exhaustion" allows a single member of a class action to satisfy the exhaustion requirement for all class members by exhausting his or her own administrative remedies with respect to each class claim. *Taylor v. Lindamoon*, 2017 WL 4176338 at * 4 (M.D. Tenn. Sept. 19, 2017). The vicarious exhaustion doctrine is available to plaintiffs only where a class has been certified pursuant to Rule 23(b)(2). *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004). The *Chandler* court noted that where, as here, the composition of the class is subject to constant change beyond the class members' control, it could be extraordinarily difficult for all class members to exhaust administrative remedies before filing suit. *Id*. Moreover, requiring all class members to exhaust their administrative remedies "could impose an intolerable burden upon the inmate complaint review system." *Id*.

The Court is contemporaneously certifying a class in this action pursuant to Fed. R. Civ. P. 23(a), (b)(1) and (b)(2). Therefore, pursuant to the above authorities, Plaintiffs have, at a minimum, raised genuine issues of material fact as to whether Dodson and other members of the class may rely upon Vick's exhaustion to proceed. CCA's motion on the exhaustion issue will be denied.

Americans with Disabilities Act - Title II[8]

Defendant CCA contends that it is not subject to Title II of the ADA and, therefore, cannot be liable to Plaintiffs thereunder. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

---

8     Although the Amended Complaint alleges failure to accommodate and discrimination under Section 504 or the Rehabilitation Act, that claim is brought against the State Defendants only. Doc. No. 55 at ¶ 81.

13

the benefits of the services, programs, or activities *of a public entity*, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. "Public entity" includes any state or local government and any department, agency, special purpose district, or other instrumentality of a state or local government. 42 U.S.C. § 12131.

Title II of the ADA applies to prisoners housed in state prisons. *Maher v. Tenn.*, 2018 WL 1404405 at * 4 (W.D. Tenn. March 20, 2018). However, even though CCA may have contracted with the State of Tennessee to provide governmental prison services, that does not convert CCA into a "public entity" for purposes of Title II. *Id*. CCA, as a private prison, is not subject to Title II of the ADA. 42 U.S.C. § 12181(7); *Anderson v. South Central Correctional Facility*, 2015 WL 5794524 at * 4 (M.D. Tenn. Oct. 1, 2015); *Logan v. Corrections Corp. of America*, 2012 WL 2160276 at * 6 (M.D. Tenn. June 12, 2012); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).

Plaintiffs agree with the dissent in *Edison* and argue that CCA *should* be subject to suit under Title II of the ADA. Plaintiffs contend that cases that have held to the contrary are wrongly decided. The Court will not depart from the majority view, however, unless and until the Sixth Circuit holds otherwise. Plaintiffs' Title II ADA claims against CCA will be dismissed.

CONCLUSION

For all these reasons, Defendants Tennessee Department of Corrections and Tony Parker's Supplemental Motion to Dismiss (Doc. No. 65) will be denied. Defendant CoreCivic's Supplemental Motion to Dismiss and for Summary Judgment (Doc. No. 59) will be granted in part and denied in part. Plaintiff's ADA claims against CCA will be dismissed.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE